UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHAWN MALONE KHALIFA, | No. 12-56230 |
| Petitioner - Appellant, | D.C. No. 5:10-cv-01446-GAF-PLA |
| v. | Central District of California, Riverside |
| BRENDA M. CASH, Warden, | |
| Respondent - Appellee. | ORDER AMENDING |

Before: PREGERSON, TALLMAN, and BEA, Circuit Judges.

The dissent filed on November 25, 2014 is hereby amended.

Khalifa v. Cash, No. 12-56230 (Amended Dissent)

PREGERSON, Circuit Judge, dissenting:

Shawn Khalifa[1] appeals his felony murder conviction arguing his Sixth

Amendment speedy trial rights were violated.

The disposition correctly applied the first *Barker* factor by finding that the

three-and-a-half year delay was "clearly lengthy and thus presumptively

prejudicial." The disposition correctly determined that the second factor was

neutral because most of the delay was caused by Khalifa's co-defendants' requests

for continuances.

Contrary to the disposition I submit that the third factor regarding the

forcefulness of Khalifa's assertion of his speedy trial right was not neutral. A

---

[1] Khalifa was just two months beyond his fifteenth birthday when the crime occurred. He and Mark Gardner were acting as lookouts for a burglary while two older boys entered the victim's home through the front door. Khalifa allegedly snuck through the backdoor and took a handful of candy from the victim's kitchen. The older boys beat the elderly homeowner to death. Khalifa was found guilty of first degree felony murder and sentenced to twenty-five years to life. Based on Khalifa's limited participation and his status as a juvenile, this sentence appears unusually harsh. As the Supreme Court has found, children like Khalifa lack maturity and have "an underdeveloped sense of responsibility leading to recklessness, impulsivity, and heedless risk-taking." *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012). Further, the brain of a fifteen year old is "not yet fully mature in regions and systems related to higher-order executive functions such as impulse control, planning ahead, and risk avoidance." *Id.* at 2464, n.5 (internal citations ommitted).

1

defendant's assertion of his speedy trial right is "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker v. Wingo*, 407 U.S. 514, 531-32 (1972). Khalifa objected to continuances on five separate occasions during the eight month period between October 2006 and June 2007. To vindicate his right to a speedy trial he moved to sever his case from those of his co-defendants. While Khalifa consented to much of the delay, that consent does not neutralize the fact that he forcefully asserted his speedy trial rights for eight consecutive months. A delay of eight months on this record is most likely presumptively prejudicial. *See United States v. Gregory*, 322 F.3d 1157, 1162 n.3 (9th Cir. 2003). This third factor weighs in favor of Khalifa.

Finally, I submit that Khalifa was prejudiced by the eight month delay. Prejudice should be assessed by considering "the interests of defendants which the speedy trial right was designed to protect . . . : (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532. Here, the disposition does not explicitly touch upon the first two interests. Khalifa was prejudiced by his pretrial incarceration. He spent over three years in jail awaiting trial. Khalifa was arrested on January 30, 2004, three days after the crime was committed and about two months beyond his fifteenth birthday. His trial started on

2

September 17, 2007, a couple months before his nineteenth birthday. In *Barker*, the Supreme Court determined that "time spent in jail awaiting trial has a detrimental impact on the individual." *Id*. Khalifa's three-and-a-half year pretrial incarceration and the anxiety it caused him–a teenager awaiting trial for felony murder–weigh in favor of finding that Khalifa was prejudiced by the delay.

The delay also impaired, and thus prejudiced, Khalifa's defense because the only non-biased eyewitnesses, one of whom was Erick Castillo, left the country and moved to Mexico during the delay. *See Id.* at 532 ("If witnesses . . . disappear during a delay, the prejudice is obvious."). Because lengthy delays often cause the loss of exculpatory evidence and testimony, "impairment of one's defense is the most difficult form of speedy trial prejudice to prove." *Doggett v. United States*, 505 U.S. 647, 655 (1992). For this reason, "consideration of prejudice is not limited to the specifically demonstrable." *Id*.

Further, the California Court of Appeal's factual determination that witness Castillo's preliminary hearing testimony was consistent with co-defendant Mark Gardner's testimony was refuted by clear and convincing evidence. Khalifa's appellate brief demonstrated that Castillo's preliminary hearing testimony varied from Gardner's testimony on several points; most notably co-defendant Gardner testified to facts that made him appear less culpable. Gardner testified that he was

3

only in the side yard briefly before waiting in front of the house for Khalifa, whereas witness Castillo saw Khalifa and Gardner leave the side yard together. The jury may have discounted Gardner's account as biased if Castillo had testified at trial because it appears as if Gardner may have twisted the facts to minimize his involvement. The jury might have taken this into consideration when weighing Gardner's credibility. Co-defendant Gardner also portrayed Khalifa as having a more active role in the crime by testifying that Khalifa exited the home only seconds before Rivera and Pena (the men who beat the victim to death), not five to ten minutes before as explained by Castillo. Gardner's version makes it more likely that Khalifa was in the home during the victim's murder, however, Castillo's account presents an issue as to Khalifa's presence during and his knowledge of the killing. Had the jury heard these varied accounts it would have had to weigh the credibility of both witnesses and it is likely there would have been more discussion about co-defendant Gardner's motivations for testifying. Likely, there also would have been a more in-depth consideration of the extent of Khalifa's involvement. For these reasons, the loss of Castillo as a witness at trial prejudiced Khalifa.

Three of the four Barker factors weigh in Khalifa's favor and support a finding of a violation to his right to a speedy trial under the Sixth Amendment. Therefore, Khalifa's habeas petition should have been granted.

The only issue before this panel was whether Khalifa was denied his right to a speedy trial. Before the state courts and the district court, Khalifa challenged the constitutionality of his 25 years to life sentence as unconstitutionally cruel and unusual on account of his age and his relative culpability for the murder. Before our court, Khalifa petitioned for a certificate of appealability challenging the constitutionality of his sentence as cruel and unusual under the Eighth Amendment, but the motion was denied. **Docket 3**. Even the deputy attorney general in this case acknowledged the harshness of Khalifa's sentence for a kid who went into a house and filled his pockets with candy.

Khalifa played the relatively minor role of lookout during the robbery of an elderly man. Much of the evidence against Khalifa came from Gardner, one of Khalifa's co-defendants who testified for the prosecution in exchange for a lighter sentence. Gardner testified that the night of the offense, he was hanging out with Rivera, Pena, and Khalifa. Khalifa was the youngest at 15 years of age. The group began discussing their need for money and someone suggested robbing an elderly neighbor.

The four boys walked toward the victim's home, Rivera and Pena in front and Gardner and Khalifa following behind. Gardner explained that Rivera and Pena told Gardner and Khalifa to wait outside while Rivera and Pena went up to

the victim's front door and entered.  Gardner testified that he and Khalifa went through a gate leading to the victim's backyard.  Gardner also testified that Khalifa entered the victim's home, was inside the kitchen for a couple minutes, and looked through the kitchen drawers.  Khalifa took candy from the victim's kitchen and then left through the back door.

There was no evidence that Khalifa saw the victim being beaten, but the evidence indicates that Khalifa may have heard the victim moan.  Khalifa and Gardner then returned to the front of the home.  After killing the homeowner, Rivera and Pena came out the front door and drove down the street in the victim's car.  Khalifa got in the car at the prompting of Rivera and Pena.

Khalifa was tried and convicted of first degree felony murder in connection with his alleged participation in the burglary and robbery.  He was sentenced to 25 years to life, the most severe punishment available for a 15 year old convicted of first degree murder in California.  *See* Cal. Penal Code § 190.5.  In fact, Khalifa received the same maximum sentence he would have received had he entered through the front door and participated in the killing of the victim.

He had just turned 15 at the time of the crime.  He did not kill anyone and there is no evidence that he could have foreseen that the victim would be killed; he entered the victim's kitchen at the rear of the house and took some candy while

6

two older boys robbed and beat the victim in the living room in the front of the house. He was sentenced to 25 years to life.

The Supreme Court's recent decisions tell us that "children are constitutionally different from adults for purposes of sentencing." We also are told by the Court that "when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability." *Miller v. Alabama*, 132 S. Ct. 2455, 2468 (2012) (quoting *Graham v. Florida*, 130 S.Ct. 2011, 2027 (2010)). Further, "compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed." *Graham*, 560 U.S. at 68 (internal quotations omitted).

In addition, as Justice Breyer notes in his concurrence in *Miller*, the felony murder rule "traditionally attributes death caused in the course of a felony to all participants who intended to commit the felony, regardless of whether they killed or intended to kill. This rule has been based on the idea of transferred intent; the defendant's intent to commit the felony satisfies the intent to kill required for murder." *Miller*, 132 S.Ct. at 2476 (internal quotations and citations omitted).

7

Justice Breyer further noted that the "theory of transferring a defendant's intent is premised on the idea that one engaged in a dangerous felony should understand the risk that the victim of the felony could be killed, even by a confederate. Yet the ability to consider the full consequences of a course of action and to adjust one's conduct accordingly is precisely what we know juveniles lack capacity to do effectively." *Id.* (internal citation omitted).

Given Khalifa's age and his minor involvement in the crime, his sentence appears unusually harsh and cruel. I believe that this issue should have been considered.